IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOCAR, INC.,

    Plaintiff,

      v.

REGIONS BANK (INC.) (Alabama),
doing business as Regions Bank, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:05-CV-2269-TWT

## ORDER

      This is an action for conversion of a check.  It is before the Court on Defendants
Regions Bank ("Regions") and Rivoli Bank & Trust's ("Rivoli") Joint Motion for
Summary Judgment [Doc. 51]; Defendant Regions' Motion for Summary Judgment
against Rivoli [Doc. 53]; Defendant Carroll Daniel Construction Co.'s ("Carroll
Daniel") Motion for Summary Judgment against Regions [Doc. 54]; and  Plaintiff
Socar, Inc.'s Motion for Partial Summary Judgment [Doc. 55].  For the reasons set
forth below, Defendant Regions and Rivoli's joint motion is GRANTED; Defendant
Regions' motion against Rivioli is DENIED as moot; Defendant Carroll Daniel's
motion is GRANTED; and the Plaintiff's motion is DENIED.

I. <u>BACKGROUND</u>

This case arises out of the Paulding County School District's ("the District")
construction of the Irma C. Austin Middle School in Paulding County, Georgia.  The
District entered into a contract with Defendant Carroll Daniel as general contractor for
the project.  Carroll Daniel entered into a subcontract with Houston Steel Fabricators,
Inc. ("Houston Steel") to erect steel joists, decking and accessory materials.  Houston
Steel then ordered these joists, decking and accessory materials from the Plaintiff,
Socar, Inc.  The Plaintiff provided these materials, which had a total principal value
of $77,600.00.

On or about July 30, 2004, the District issued Check No. 1943 in the amount
of $77,600.00 ("the check").  The check's payees were listed in a stacked formation
as follows:

> To the      Carroll Daniell[sic] Construction
> Order       Houston Steel Fabricators, LLC
> of          Socar International
>             Gainesville, GA 30603

(Pl.'s Mot. for Summ. J., Ex.2.)  The check did not contain any additional comments
or instructions regarding whether it was jointly payable or payable in the alternative.
The check was then endorsed by Carroll Daniel and Houston Steel, but not by Socar.
It was presented to Defendant Rivoli for deposit into a Houston Steel account at
Rivoli.  The check was then presented to Regions through the Federal Reserve

Case 1:05-cv-02269-TWT   Document 74   Filed 06/19/06   Page 3 of 15

System, and was paid by Regions. Houston Steel, however, never paid the Plaintiff for the materials it supplied.

The Plaintiff brought this claim for conversion against Regions pursuant to O.C.G.A. § 11-3-420. Defendant Regions then filed a third party complaint against Rivoli, Carroll Daniel and Houston Steel for contribution and indemnity and breach of warranty and good title. Defendants Regions and Rivoli and the Plaintiff have moved for summary judgment on the Plaintiff's claims. Regions and Carroll Daniel have also filed separate motions for summary judgment on the third party complaint.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

T:\ORDERS\05\Socar\msjtwt.wpd                    -3-

## III. DISCUSSION

A. Defendants Regions and Rivoli's Joint Motion for Summary Judgment

1. Conversion Under O.C.G.A. § 11-3-420

The Plaintiff alleges that Defendant Regions converted the check issued to Carroll Daniel Construction, Houston Steel Fabricators, LLC and Socar International by cashing it without the endorsement of the Plaintiff.  Under Article 3 of Georgia's version of the Uniform Commercial Code, an instrument is converted where:

> [I]t is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

O.C.G.A. § 11-3-420(a).  Thus, the Plaintiff's conversion claim requires proof that the check was taken by Rivoli and paid by Regions for a person not entitled to take the check or receive payment.

A brief historical overview of the statutory framework and relevant case law on this issue proves helpful.  Prior to 1996, Georgia's Uniform Commercial Code section on payment of instruments, formerly codified at O.C.G.A. § 11-3-116, did not expressly provide for a result when a check was ambiguous as to whether it was payable in the alternative or jointly.  No court decision in Georgia, moreover, expressly addressed this issue.  It was the consensus of courts in other states interpreting identical provisions, however, that unless a check was unambiguously

payable in the alternative it was payable jointly and was required to be endorsed by all payees.  See Midwest Indus. Funding, Div. of Rivera Lend Lease, Inc. v. First Nat'l Bank of Lockport, 973 F.2d 534, 537 (7th Cir. 1992); Van Lunen v. State Cent. Sav. Bank of Keokuk, Iowa, 751 F. Supp. 145, 148 (S.D. Iowa 1990); Peoples Nat'l Bank v. American Fidelity Fire Ins. Co., 386 A.2d 1254, 1256-57 (Md. Ct. Spec. App. 1978); Feldman Constr. Co. v. Union Bank, 28 Cal. App. 3d 731, 735 (1972).

Following a revision to the Uniform Commercial Code, however, Georgia adopted UCC § 3-110(d) (codified at O.C.G.A. § 11-3-110(d)) to replace O.C.G.A. § 11-3-116.  As revised, § 3-110(d) added an additional sentence and now reads as follows:

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

O.C.G.A. § 11-3-110(d) (emphasis added.)  According to the UCC comment on this section, "[t]he third sentence of subsection (d) is directed to cases in which it is not clear whether an instrument is payable to multiple payees alternatively. In the case of ambiguity persons dealing with the instrument should be able to rely on the indorsement of a single payee."  O.C.G.A. § 11-3-110(d), Comment 4 (2004).

Although this Court could find no Georgia case interpreting this Code section, state courts around the country have acknowledged that the purpose of this new UCC provision is to shift the presumption so that a check which is ambiguous is payable in the alternative and may be enforced or transferred by any of the payees.  See, e.g., Pelican Nat'l Bank v. Provident Bank of Maryland, 849 A.2d 475, 481 (Md. 2004); Hyatt Corp. v. Palm Beach Nat'l Bank, 840 So.2d 300, 302 (Fla. Dist. Ct. App. 2003); Allied Capital Partners, L.P. v. Bank One, Texas, N.A., 68 S.W.3d 51, 53 (Tex. App. 2001); Meng v. Maywood Proviso State Bank, 702 N.E.2d 258, 264 (Ill. App. Ct. 1998); Dimmitt & Owens Fin., Inc. v. USA Glass & Metal, Inc., 1998 WL 852862, *2 (N.D. Ill. 1998); Danco, Inc. v. Commerce Bank/Shore, N.A., 675 A.2d 663, 666 (N.J. Super Ct. App. Div. 1996).

Indeed, courts analyzing the revised UCC under facts virtually identical to those before this Court have held as a matter of law that checks containing "stacked" endorsements without any grammatical connectors are ambiguous and properly payable with the endorsement of any one payee.  See Pelican Nat'l Bank, 849 A.2d at 481-83; Harder v. First Capital Bank, 775 N.E.2d 610, 614 (Ill. App. Ct. 2002); Allied Capital Partners, 68 S.W.3d at 52-54; see also In re Ames Dept. Stores, Inc., 322 B.R. 238, 245 (Bankr. S.D. N.Y. 2005) ("[I]f a check is addressed to two or more payees without any grammatical connectors between the payees, such as 'and' or 'or,'

the UCC essentially inserts the word 'or' between the names of the payees.  This holds for 'stacked payees' such as MGM and Bank of America Commercial.  In fact, stacked payees are paid in the alternative even if one payee has a factoring relationship with the other payee...").

In <u>Harder</u>, for example, the Illinois appellate court affirmed the trial court's granting of the bank's motion to dismiss the plaintiffs' conversion and negligence claims.  These claims related to the bank's payment, under a single endorsement, of two checks made payable as follows:

> Emergency Damage Control
> Charles and Marsha Harder
> Bank of Pontiac
>
> Emergency Damage Control
> Charles and Marsha Harder

<u>Harder</u>, 775 N.E.2d at 611.  Analyzing UCC § 3-110(d) (as codified under Illinois law), the UCC comments, and case law, the <u>Harder</u> court found that the checks were ambiguous because there was no grammatical connector between the listed payees. <u>Id.</u> at 613-614.  The court further stated, "[h]aving already found the checks in the instant case were ambiguous and payable in the alternative, we have, in essence, inserted 'or' where there was no grammatical connector between the payees." <u>Id.</u> at 614.  The court thus held that, because the checks were payable in the alternative with

the endorsement of any listed payee, the plaintiff's conversion and negligence claims were properly dismissed.

Similarly, in the recent case of Pelican Nat'l Bank, the Maryland Court of Appeals reiterated that a check made payable to multiple payees listed in stacked formation without any grammatical connector or punctuation is ambiguous. Pelican Nat'l Bank, 849 A.2d at 476. The check at issue was made payable to:

> Andrew Michael Bogdan, Jr., Crystal Bogdan
> Oceanmark Bank, FSB
> Goodman-Gable-Gould Company

Id. Based upon UCC § 3-110(d) (as codified under Maryland law), the court held that the "stacked" payee format without grammatical connectors or punctuation rendered the check ambiguous as to whether it was payable to the persons alternatively. The court thus found that Provident Bank properly paid the check with one of the payees' endorsement. Id. at 481-83.

Also, in Allied Capital Partners, the Texas Court of Appeals considered checks made payable to:

> Complete Design
> Allied Capital Partners, L.P
> 2340 E. Trinity Mills Ste. 300
> Carrollton, Texas 75006

Allied Capital Partners, 68 S.W. 3d at 51. When one of the payees deposited both checks and the plaintiff received none of the proceeds, the plaintiff sued Bank One for

conversion.  Affirming the trial court's award of summary judgment in Bank One's favor, the appellate court analyzed UCC § 3-110(d) (as codified in the Texas Business and Commercial Code ) and concluded that "[w]here an instrument does not use the word 'or' or 'and' between multiple payees, the instrument is ambiguous and, therefore, payable to any of the payees individually."  Id. at 52.

Despite this ample case precedent from other states supporting the Defendants' position that this stacked check was ambiguous and thus exhibited alternative payees, the Plaintiff argues that the check should be treated as a joint check.  The Plaintiff first argues that in interpreting the statutory language of O.C.G.A. § 11-3-110(d), this Court should place appropriate emphasis on the second sentence, which states: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."  The Plaintiff interprets this language to mean that "for an instrument to be considered to allow alternative payment, some affirmative designation must be made that the check is issued in the alternative." (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 6.)  In support of this argument, the Plaintiff cites to Trust Co. of Columbus v. Refrigeration Supplies, Inc., 241 Ga. 406 (1978) and Insurance Co. of North America v. Atlas Supply Co., 121 Ga. App. 1 (1970). (Id.)  The Court finds the Plaintiff's argument wholly unpersuasive for several reasons.  First, the Georgia courts in Trust Co. of

Columbus or Insurance Co. of North America do not use the term "joint check" to describe a check payable to two or more parties.  More significantly, this Court is not persuaded that under the current code section, a check is payable in the alternative only where there is an "affirmative designation creating an ambiguity."  (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 6.)  In Georgia, "language is unambiguous if it is capable of only one reasonable interpretation."  See Hammer Corp. v. Wade, 628 S.E.2d 638, 641 (Ga. Ct. App. 2006).  Although the Plaintiff's contention that stacked payees are joint payees might arguably be one reasonable interpretation, the conclusion that they are alternative payees is certainly also reasonable, as demonstrated by the holdings of the several other state courts discussed previously.

The Plaintiff next alleges that the weight of authority recognizes that this "joint check" is not ambiguous.  In support of this assertion, Socar cites to only one case applying the UCC's amendment and finding that a check containing stacked payees was not intended to be paid alternatively.[1]  In Bank of America Nat'l Trust and Sav.

---

[1]The Plaintiff also cites to Midwest Indus. Funding, 973 F.2d at 534.  In that case, which involved stacked payees, the Seventh Circuit found that the stacked payees were jointly payable.  However, the district court entered its judgment prior to the amendment to UCC § 3-116, and the Seventh Circuit thus did not apply UCC § 3-110(d) (codified at 810 Ill. Comp. Stat. 5/3-110(d)).  The Plaintiff emphasizes the Seventh Circuit's remark in a footnote that the UCC amendment "did not alter the substantive rule of [§] 3-116 that a check made out to joint payees must be endorsed by all payees."  Id. at 536 n.1.  This Court finds Midwest Indus. Funding, unpersuasive, however, because it relied on the general rule that "if there are two

Ass'n v. Allstate Ins. Co., 29 F. Supp. 2d 1129 (C.D. Cal. 1998), a loss payee brought a claim against the borrower's insurance company. The insurance company had issued the check payable to its insured and to the plaintiff as loss payee. The bank's endorsement was forged and the check was cashed. Several important factors limit that case's persuasive authority here, however. First, the California district court expressly declined to determine whether all checks with stacked payees were unambiguous. Id. at 1139. Second, the check in Bank of America indicated that it was a settlement of the rental dwelling loss caused by fire. Id. at 1140. A witness testified that she could tell from the face of the check that it was an insurance check and who the insureds were. Id. In this case, the check itself provided no such indications regarding the drawer's intent. Third, Bank of America was distinguished for these reasons by cases with facts much more closely aligned to this one. See Allied Capital Partners, 68 S.W.3d at 54; Pelican Nat'l Bank, 849 A.2d at 486. Given

---

names on the check and the check is not payable in the alternative then the statute establishes that check is jointly payable." Id. at 537. The Seventh Circuit derived this rule from cases decided under the prior UCC provision. See id. (citing Peoples National Bank, 386 A.2d at 1257, Feldman Construction Co., 28 Cal. App. 3d at 735, and Van Lunen, 751 F. Supp. At 147-48). Moreover, subsequent state court decisions have expressly declined to follow Midwest Indus. Funding because it was based on a default rule that has since been changed. See Pelican Nat'l Bank, 381 A.2d at 340-41; Dimmitt & Owens Financial, Inc., 1998 WL 852862, at *3.

these distinctions and in light of the substantial precedent holding that stacked payees are ambiguous, the Court finds that the Plaintiff's lone citation unpersuasive.

The Plaintiff argues, finally, that even if the check was ambiguous, Regions was required to go beyond the four corners of the instrument to determine the intent of the drawer.  Of course, this argument is inconsistent with the plain language of the statute. O.C.G.A. § 11-3-110 (d) clearly provides that, where the instrument is payable to two or more people and is ambiguous, the instrument is payable in the alternative.  It would be of little purpose for the statute to allow a bank to pay an ambiguous check in the alternative and then hold the bank liable for some other intent of the drawer not expressed on the check itself.  The UCC comments to § 3-110(a), moreover, discuss the importance of the drawer's intent in determining to whom a check is payable.  See O.C.G.A. § 11-3-110(a), Comment 1 (2004).  If the UCC intended to require banks to inquire as to the drawer's intent in determining whether a check with multiple payees was payable jointly or in the alternative, it is unlikely it would have clearly established a default rule in favor of alternative payment. See Harder, 775 N.E.2d at 613 (rejecting as unsupported by the statute or committee comments the plaintiffs' argument that because section 3-110(a) requires an examination of the drawer's intent, so too should section 3-110(d)).  Also, it would be exceedingly difficult for a major bank such as Regions, which handles millions of transactions each day, to investigate

the subjective intent of the drawer every time a check lists multiple payees without indicating how they are to be paid.  The Court notes, finally, that the Plaintiff has cited no Georgia case law in support of its  position.  For all these reasons, the Court finds it improper to consider extrinsic evidence as to the subjective intent of the drawer in determining whether a check with multiple payees is payable jointly or in the alternative.[2]

Pursuant to the plain language of O.C.G.A. § 11-3-110(d), the Court finds that the check was properly payable to any of the payees individually, and Defendant Regions properly paid the check based on the endorsement of at least one payee, Carroll Daniel.  Therefore, the Plaintiff's conversion claim against these Defendants fails as a matter of law.

2. <u>Common Law Conversion</u>

The Plaintiff also contends in its summary judgment motion that even if it is not entitled to recovery for conversion under the Georgia Code, it may still assert a conversion action based on common law. (Pl.'s Mot. for Summ. J., at 17-22.) However, the Court denied as untimely the Plaintiff's motion to amend its complaint

---

[2]The Court also declines the Plaintiff's invitation to examine Regions' policies for its employees regarding the payment of multiple payee checks.  The Plaintiff cites no authority other than <u>Bank of America</u>, 29 F. Supp. 2d at 1139, to support its contention that such evidence should be considered. No Regions Bank teller ever touched the check.

to add a single count of common law conversion.  (Order of June 1, 2006).  The Court will thus not consider this claim.  In any event, such a claim is superceded by the UCC.

B. Defendants' Other Motions for Summary Judgment

Because the Court finds as a matter of law that Regions is not liable to the Plaintiff, Defendants Carroll Daniel and Rivoli are not liable to Regions for Contribution and Indemnity and Breach of Warranty.  The Court thus grants Carroll Daniel's Motion for Summary Judgment and denies as moot Regions' motion against Rivoli.

IV. CONCLUSION

For the reasons set forth above, Defendants Regions and Rivoli's Joint Motion for Summary Judgment [Doc. 51] is GRANTED; Defendant Regions' Motion for Summary Judgment against Defendant Rivoli [Doc. 53] is DENIED as moot; Defendant Carroll Daniel's Motion for Summary Judgment against Regions [Doc. 54] is GRANTED; and Plaintiff Socar, Inc.'s Motion for Partial Summary Judgment [Doc. 55] is DENIED.

SO ORDERED, this 19 day of June, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.

United States District Judge